Donald M. Falk (CA Bar No. 150256)
dfalk@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306-2112
Telephone:   (650) 331-2000
Facsimile:    (650) 331-2060

John Nadolenco (CA Bar No. 181128)
jnadolenco@mayerbrown.com
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
Telephone:   (213) 229-9500
Facsimile:    (213) 625-0248

David L. Balser (GA 035835)
(admitted pro hac vice)
dbalser@mckennalong.com;
Nathan L. Garroway (GA 142194)
(admitted pro hac vice)
ngarroway@mckennalong.com;
MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, N.E., Suite 5300
Atlanta, GA 30308
Telephone:  (404) 527-4000
Facsimile:  (404) 527-4198

Attorneys for Defendant
AT&T Mobility LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| ANGELA GASPAR and DARRIN WILLARD, on behalf of Themselves and all others similarly situated,<br><br>        Plaintiffs<br><br>vs.<br><br>AT&T MOBILITY, LLC, AT&T, Inc., and DOES 1-100,<br><br>        Defendants | Case No. 2:10-CV-02136-DSF (SSx)<br><br>**Memorandum Of Points And Authorities In Support Of Defendant AT&T Mobility LLC's Motion To Compel Arbitration And To Dismiss Claims or, in the Alternative, to Stay Case**<br><br>Date:   July 12, 2010<br>Time:  1:30 p.m.<br><br>Honorable Dale S. Fischer |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. i

INTRODUCTION ..............................................................................1

BACKGROUND ................................................................................2

    A.    Gaspar And Willard Agree To Arbitrate Their Disputes With ATTM .........................................................................................2

    B.    The Consumer-Friendly Features Of ATTM's Arbitration Provision....................................................................................4

    C.    Dispute Resolution Under ATTM's Arbitration Provision .................6

    D.    Gaspar And Willard File Suit Against ATTM Notwithstanding Their Agreements To Arbitrate ...........................................................7

ARGUMENT ....................................................................................7

I.    THE FAA MANDATES ENFORCEMENT OF PLAINTIFFS' ARBITRATION AGREEMENTS ............................................................7

II.    THE FAA PREEMPTS THE NINTH CIRCUIT'S HOLDING THAT ATTM'S ARBITRATION PROVISION IS UNENFORCEABLE UNDER CALIFORNIA LAW....................................................................9

CONCLUSION ...............................................................................13

i

MEM. OF P'S AND A'S IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO
DISMISS CASE OR, IN THE ALTERNATIVE, TO STAY CASE, CASE NO. 2:10-CV-02136-DSF (SSx)

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*AT&T Mobility LLC v. Concepcion*,
  2010 WL 303962 (U.S. May 24, 2010)..........................................................1, 9

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002)..............................................................................................8

*Laster v. AT&T Mobility LLC*,
  584 F.3d 849 (9th Cir. 2009) , *cert. granted*, 2010 WL 303962
  (U.S. May 24, 2010) ........................................................................ 1, 9, 11, 13

*Livadas v. Bradshaw*,
  512 U.S. 107 (1994)............................................................................................12

*Makarowski v. AT&T Mobility, LLC*,
  2009 WL 1765661 (C.D. Cal. June 18, 2009) ....................................................4

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985)......................................................................................11, 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)..................................................................................................8

*Preston v. Ferrer*,
  552 U.S. 346 (2008)..............................................................................8, 11, 12

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  498 F.3d 976 (9th Cir. 2007)..................................................................9, 11, 12

*Sparling v. Hoffman Constr. Co.*,
  864 F.2d 635 (9th Cir. 1988)........................................................................ 8-9

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  130 S. Ct. 1758 (Apr. 27, 2010) ..................................................................*passim*

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
  368 F.3d 1053 (9th Cir. 2004)............................................................................8

ii

MEM. OF P'S AND A'S IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO
DISMISS CASE OR, IN THE ALTERNATIVE, TO STAY CASE, CASE NO. 2:10-CV-02136-DSF (SSx)

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Marek*,
  238 F.3d 310 (5th Cir. 2001)................................................................8

*Volt Info. Scis., Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*,
  489 U.S. 468 (1989)................................................................8

**STATUTES AND RULES**

9 U.S.C. §§ 1-16 ................................................................1

9 U.S.C. § 2 ................................................................7, 8

9 U.S.C. § 3 ................................................................8, 9

Fed. R. Civ. P. 11(b) ................................................................4

**INTRODUCTION**

Defendant AT&T Mobility LLC ("ATTM") respectfully moves this Court to compel plaintiffs Angela Gaspar and Darrin Willard to arbitrate their claims against ATTM and to dismiss this case or, in the alternative to stay the case.[1] When Gaspar and Willard obtained wireless service from ATTM, they agreed to resolve their disputes with ATTM in individual arbitration or small claims court. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires them to honor their promises.

Gaspar and Willard likely will oppose this motion by arguing that their arbitration agreements are unconscionable under California law because their agreements require that arbitration be conducted on an individual  rather than class-wide basis.  ATTM acknowledges that the Ninth Circuit so construed California law in *Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), *cert. granted*, 2010 WL 303962 (U.S. May 24, 2010), and further rejected ATTM's contention that the FAA preempts such an application of California unconscionability law.

But the Supreme Court has recently granted ATTM's petition for certiorari in *Laster* and thus will review the Ninth Circuit's rejection of FAA preemption. *See AT&T Mobility LLC v. Concepcion*, 2010 WL 303962 (U.S. May 24, 2010) (No. 09-893).  If the Supreme Court reverses the Ninth Circuit's decision in *Laster*, that holding would require this Court to enforce Gaspar's and Willard's arbitration agreements in this case.  Under such circumstances, ATTM respectfully submits that—if the Court is not inclined that compel arbitration and dismiss the claims— judicial economy would best be served by staying this action until the Supreme Court decides *Concepcion*.

---

[1]    Defendant AT&T Inc. was dismissed from this action on May 13, 2010.  *See* Dkt. # 10.

**BACKGROUND**

A.     **Gaspar And Willard Agree To Arbitrate Their Disputes With ATTM.**

Angela Gaspar, a former ATTM customer, and Darrin Willard, a current ATTM customer, are California residents.  Decl. of Caroline Mahone-Gonzalez Exs. 7-9; Compl. ¶¶ 22-23.   Both have entered into service agreements with ATTM.

On March 19, 2008, Gaspar purchased a Blackberry Curve to use ATTM's wireless service on ATTM's network.  Mahone-Gonzalez Decl. ¶ 4.  In the course of activating the device, Gaspar accepted a wireless service agreement with ATTM—which included ATTM's Terms of Service—via the Interactive Voice Response ("IVR") process.  *Id.* ¶¶ 4-5 & Exs. 1-2.  The first paragraph of the Terms of Service highlights the arbitration provision (Decl. of Richard J. Rives Ex. 1 at 1), which requires both ATTM and Gaspar to "arbitrate all disputes and claims between us" or to pursue such disputes in small claims court. *Id.* at 14.  The Terms further specify that arbitration must be conducted on an individual rather than class-wide basis. *Id.* at 13-14, 17.

Later that year, on December 23, 2008, Gaspar purchased and activated a Blackberry Bold for use on ATTM's wireless network.  Mahone-Gonzalez Decl. ¶ 6.  During that transaction, which took place at an ATTM store in Stevenson Ranch, California (*id.*), Gaspar again indicated her acceptance of the terms of ATTM service by signing the store's electronic signature-capture device under an acknowledgment stating: "I have read, understood and agree to be bound by the agreement for wireless service on the above number.  The agreement I am signing includes the Customer Service Summary, Terms of Service, Rate Plan and feature brochures for the services described in the Customer Service Summary all of which I acknowledge were presented to me prior to my signing below." *Id.* ¶ 6 &

1  Exs. 3-4; Decl. of Ramon L. Menendez ¶ 4; Decl. of Scott Williamson ¶ 3.  The

2  Terms of Service contain an arbitration provision identical to the one Gaspar

3  accepted in March 2008.  *See* Rives Ex. 2 at 12-16.

4         ATTM revised its arbitration provision in early 2009.  Pursuant to the

5  change-in-terms provisions of ATTM's Terms of Service, ATTM provided notice

6  of the revised 2009 arbitration provision to its customers—including Gaspar—with

7  their March through May 2009 monthly bills.  Mahone-Gonzalez Decl. Exs. 7-9.

8  Like the arbitration provision that Gaspar twice accepted in 2008, the 2009 revised

9  version requires both ATTM and Gaspar to "arbitrate all disputes and claims

10  between us" on an individual basis or in small claims court.  Decl. of Daniel Jones

11  Ex. 4.

12         On December 10, 2009, Willard purchased and activated an iPhone 3GS for

13  use on ATTM's wireless network.  Mahone-Gonzalez Decl. ¶ 10.  During that

14  transaction, which took place at an ATTM store in Dana Point, California (*id.*),

15  Willard indicated his acceptance of the terms of ATTM service by signing the

16  stores' electronic signature-capture device under an acknowledgment stating: "I

17  agree to the Customer Service Summary (CSS), Terms of Service, Rate Plan and

18  features brochure for the services described in the CSS, all of which were

19  presented to me prior to my signing below.  If buying an iPhone, I agree that use of

20  the iPhone acts as an acceptance of the Apple and third party terms and conditions

21  included with the iPhone."  *Id.* & Exs. 10-11.  Those Terms included ATTM's

22  2009 arbitration provision, which require both ATTM and Willard to "arbitrate **all**

23  **disputes and claims** between us" on an individual basis or in small claims court.

24  Rives Decl. Ex. 3 at 15 (emphasis in original).

25

26

27

28

MEM. OF P'S AND A'S IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO
DISMISS CASE OR, IN THE ALTERNATIVE, TO STAY CASE, CASE NO. 2:10-CV-02136-DSF (SSx)

**B.      The Consumer-Friendly Features Of ATTM's Arbitration Provision.**

ATTM's arbitration provision ensures that arbitration is a realistic and effective dispute-resolution mechanism for ATTM's customers.  As Judge Feess of this Court has put it, "ATTM's arbitration agreement contains perhaps the most fair and consumer-friendly provisions this Court has ever seen."  *Makarowski v. AT&T Mobility, LLC*, 2009 WL 1765661, at *3 (C.D. Cal. June 18, 2009) (describing 2006 version of arbitration provision).   In particular, the provision includes the following features (Rives Decl. Ex. 3 at 15-19):

- **Cost-free arbitration:**  For consumer claims of $75,000 or less, "[ATTM] will pay all [American Arbitration Association ("AAA")] filing, administration, and arbitrator fees" unless the arbitrator determines that the claim is "frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b))";[2]

- **$10,000 minimum award if arbitral award exceeds ATTM's settlement offer**:   If the arbitrator awards a customer an amount that is greater than ATTM's last "written settlement offer made before an arbitrator was selected," ATTM will pay the customer the greater of $10,000 or the arbitral award.

- **Double attorneys' fees available:**  If the arbitrator awards the customer more than ATTM's last settlement offer, then "[ATTM] will * * * pay [the customer's] attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses, * * * that [the] attorney reasonably accrues for investigating, preparing, and pursuing [the] claim in arbitration";[3]

---

[2]      In the event that an arbitrator concludes that a customer's claim is frivolous, the AAA's consumer arbitration rules would cap the customer's arbitration costs at $125 for claims of $10,000 or less.  *See* Jones Decl. Ex. 1 (AAA, *Supplementary Procedures for Consumer-Related Disputes* § C-8).

[3]      The attorney premium "supplements any right to attorneys' fees and expenses [that the customer] may have under applicable law."  Rives Decl. Ex. 3 at 18.  Thus, even if an arbitrator were to award a customer less than ATTM's last
(cont'd)

- **ATTM disclaims right to seek attorneys' fees:** "Although under some laws [ATTM] may have a right to an award of attorneys' fees and expenses if it prevails in arbitration, [ATTM] agrees that it will not seek such an award [from the customer]";

- **Small claims court option:** Either party may bring a claim in small claims court;

- **No confidentiality requirement:** The parties need not keep the arbitration confidential;

- **Full remedies available:** The arbitrator can award the same remedies to individual consumers (including punitive damages) that a court could award;

- **Flexible consumer procedures:** Arbitration will be conducted under the AAA's Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer-Related Disputes, which the AAA designed with consumers in mind;

- **Conveniently located hearing:** Arbitration will take place "in the county * * * of [the customer's] billing address";

- **Choice of in-person, telephonic, or no hearing:** For claims of $10,000 or less, customers have the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a hearing by telephone, or a "desk" arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator"; and

- **Right to a written decision:** "Regardless of the manner in which the arbitration is conducted, the arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based."

---

settlement offer, the customer would be entitled to an attorneys' fee award to the same extent as if the claim had been brought in court.

MEM. OF P'S AND A'S IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE OR, IN THE ALTERNATIVE, TO STAY CASE, CASE NO. 2:10-CV-02136-DSF (SSx)

**C.     Dispute Resolution Under ATTM's Arbitration Provision.**

ATTM has tailored the dispute-resolution process to the needs of its customers.   A formal arbitration proceeding is the last step of the dispute-resolution process—one that is rarely necessary because the overwhelming majority of disputes are resolved through less formal means.   Like most large service providers, ATTM has a customer care department whose job it is to handle customer complaints.   *See* Jones Decl. Ex. 5 at 1.   But unlike most companies, ATTM's arbitration provision makes resolving complaints to customers' satisfaction particularly imperative.   Because the provision requires ATTM to pay the full cost of any arbitration in which the customer seeks $75,000 or less and could result in ATTM's paying the customer $10,000, plus double attorneys' fees, it is almost always in ATTM's interest for its customer service representatives to make adjustments to bills or provide credits against future bills in order to resolve customer complaints.

It is only if a customer cannot resolve his or her dispute informally through ATTM's customer service department that the arbitration provision comes directly into play.   The first step of the formal dispute-resolution process is for the customer to notify ATTM of the dispute in writing.   *Id.* Ex. 5 at 2.   That is as simple as mailing a letter to ATTM or submitting a one-page Notice of Dispute form that ATTM has posted on its web site (at http://www.att.com/arbitration-forms).   *Id.* Ex. 6.   If ATTM and the customer cannot resolve the dispute within 30 days, the customer may begin the formal arbitration process.   To do so, the customer need only fill out a one-page Demand for Arbitration form and send copies to the AAA and to ATTM.   Customers may either obtain a copy of the demand form from the AAA's web site (at http://www.adr.org) or use the simplified form that ATTM has posted on its web site (at http://www.att.com/arbitration-forms).   *Id.* Ex. 3, 7.   To further assist its customers,

ATTM has posted on its web site a layperson's guide on how to arbitrate a claim. *Id*. Ex. 5 (http://www.att.com/arbitration-information).

### D.  Gaspar And Willard File Suit Against ATTM Notwithstanding Their Agreements To Arbitrate.

Despite repeatedly agreeing to arbitrate all disputes against ATTM, Gaspar and Willard commenced a putative class action against ATTM on March 24, 2010. Gaspar and Willard allege that their service agreements with ATTM contain "non-proration provisions" that require them "to pay service fees for an entire billing cycle upon cancellation of service" in the middle of a billing cycle.  Compl. ¶¶ 32-35.  Asserting statutory and common law causes of action under California law (*id*. ¶¶ 63-80), and seeking to represent a putative statewide class of California residents (*id*. ¶ 8), Gaspar and Willard request damages, rescission of their contracts, restitution, injunctive relief, pre- and post-judgment interest, and attorneys' fees and costs (*id.* pp. 12-13).

### ARGUMENT

### I.  THE FAA MANDATES ENFORCEMENT OF PLAINTIFFS' ARBITRATION AGREEMENTS.

Gaspar and Willard's claims fall within the broad scope of their agreements to arbitrate "all disputes and claims between" them and ATTM.  Rives Decl. Ex. 3 at 15; Jones Decl. Ex. 4.  Under the FAA, those arbitration agreements must be enforced.

The FAA mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Congress enacted the FAA to "reverse the longstanding judicial hostility to arbitration agreements * * *[,] to place [these] agreements upon the same footing as other contracts[,] * * * [and] to manifest a liberal federal policy favoring arbitration

agreements." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (internal quotation marks omitted).  As the Supreme Court recently reiterated, "the central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'"  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010) (quoting *Volt Info. Scis., Inc. v. Board of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989)); *see also*, *e.g.*, *Preston v. Ferrer*, 552 U.S. 346, 349 (2008) (FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution").  Accordingly, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

The FAA applies if the arbitration agreement is "written" and in a contract "evidencing a transaction involving commerce."  9 U.S.C. § 2.  Both criteria are met here:  Gaspar and Willard have entered into arbitration agreements that are in written contracts (*see* pages 2-3, *supra*), and those contracts involve interstate commerce, as telephones, even "during intrastate use," are "[i]nterstate commerce facilities."  *United States v. Marek*, 238 F.3d 310, 318 (5th Cir. 2001).  Indeed, the arbitration provision itself specifies that the service contract "evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision."  Rives Decl. Ex. 3 at 15; Jones Decl. Ex. 4 at 2.

When, as here, the FAA governs an arbitration provision that covers the plaintiffs' claims, the Court should compel arbitration and dismiss the claims.  *See* 9 U.S.C. § 3; *see also*, *e.g.*, *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (district court may "dismiss[] the plaintiffs' claims that were subject to arbitration"); *Sparling v. Hoffman Constr. Co.*, 864

F.2d 635, 638 (9th Cir. 1988) (Section 3 of the FAA "did not limit the [district] court's authority to grant a dismissal").

## II.   THE FAA PREEMPTS THE NINTH CIRCUIT'S HOLDING THAT ATTM'S ARBITRATION PROVISION IS UNENFORCEABLE UNDER CALIFORNIA LAW.

ATTM acknowledges that the Ninth Circuit held in *Laster* that the 2006 version of ATTM's arbitration provision—which is materially similar to the revised 2009 version at issue in this case—is unconscionable under California law because it requires that claims be arbitrated on an individual basis and thereby prohibits class actions.   584 F.3d at 853-55.  We submit, however, that the Ninth Circuit's interpretation of California law is preempted by the FAA.

To be sure, the Ninth Circuit rejected ATTM's FAA preemption arguments in *Laster* and its predecessor decision, *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976 (9th Cir. 2007).  But the Supreme Court has granted certiorari in *Concepcion*, and thus will be reviewing the FAA preemption holdings in both *Laster* (the case before it) and *Shroyer* (the precedent on which *Laster*'s preemption holding is based).  Because *Concepcion* will likely resolve whether the FAA requires enforcement of ATTM's arbitration provision notwithstanding California law to the contrary, ATTM respectfully suggests that this case be stayed pending the outcome of *Concepcion*.  It makes little sense for this Court and the parties to spend resources and time resolving the questions raised by this motion when the Supreme Court will be providing authoritative answers.

If the Court nonetheless chooses to resolve the issue now, it should conclude that the preemption holdings in *Laster* and *Shroyer* are no longer good law. Rather, the Supreme Court's recent decision in *Stolt-Nielsen, S.A. v. AnimalFeeds International Corp.*, 130 S. Ct. 1758 (2010), makes clear that the FAA preempts any state-law rule requiring the availability of class arbitration when, as here, that

procedure is not necessary for consumers to vindicate their own individual claims in arbitration.

The issue in *Stolt-Nielsen* was whether an arbitration provision that is "silent" on the subject of class-wide arbitration may nonetheless be construed to permit class-wide arbitration. The Supreme Court began its analysis by observing that "[w]hile the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration is a matter of consent, not coercion." 130 S. Ct. at 1773 (citations and internal quotation marks omitted). Reiterating what it has said "on numerous occasions," the Court explained that "the central or primary purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." *Id*. (internal quotation marks omitted). In other words, under the FAA "parties are generally free to structure their arbitration agreements as they see fit," including by "agree[ing] on rules under which any arbitration will proceed." *Id*. at 1774 (internal quotation marks omitted).

The Court reasoned from these established principles that parties also "may specify *with whom* they choose to arbitrate their disputes." *Id*. It follows, the Court continued, "that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Id*. at 1775. In short, the arbitration panel's contrary conclusion in that case was "fundamentally at war with the foundational FAA principle that arbitration is a matter of consent." *Id.*

Finally, the Court explained that "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed [that] the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Id*. Indeed, the Court declared, the "changes brought about by the shift from bilateral arbitration to class-action arbitration"—including the loss of "cost savings" and

10

"efficiency" associated with bilateral arbitration and the magnified stakes of class-wide arbitration—are "fundamental." *Id*. at 1776.  Accordingly, it concluded, "the differences between bilateral and class-action arbitration are too great for arbitrators to presume, consistent with their limited powers under the FAA, that the parties' mere silence on the issue of class-action arbitration constitutes consent to resolve their disputes in class proceedings." *Id*.

These pronouncements by the Supreme Court cast a dark cloud of doubt over *Laster* and *Shroyer*, in which the Ninth Circuit rejected the proposition "that the purposes and objectives of the [FAA] encourage individual arbitration and disfavor class arbitration." *Shroyer*, 498 F.3d at 990; *see also Laster*, 584 F.3d at 856-59.   As the Supreme Court reaffirmed in *Stolt-Nielsen*, "the central or 'primary' purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms," including terms in which the parties "specify *with whom* they choose to arbitrate their disputes." 130 S. Ct. at 1773-74.  Given the Supreme Court's holding "that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so" (*id*. at 1775), it follows that class proceedings cannot be compelled when, as here, the parties expressly agreed to arbitrate with each other on a purely bilateral basis.

Moreover, the Supreme Court has explained that a "prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.'"   *Preston*, 552 U.S. at 357 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 633 (1985)).  While the Ninth Circuit has rejected the "contention that class proceedings will reduce the efficiency and expeditiousness of arbitration in general" (*Shroyer*, 498 F.3d at 990), the Supreme Court in *Stolt-Nielsen* made clear that it is "bilateral arbitration" that enables parties "to realize the benefits of private dispute resolution:  lower costs, greater

efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes."   130 S. Ct. at 1775.  Because "the relative benefits of class-action arbitration are much less assured," the FAA does not permit courts or arbitrators to impose the class-arbitration procedure on parties who did not agree to shoulder its extensive burdens (*id.*) much less condition access to the arbitral forum on agreeing to shoulder such burdens.

Finally, by acknowledging "the fundamental changes brought about by the shift from bilateral arbitration to class-action arbitration" (*id.* at 1776), *Stolt-Nielsen* bolsters another argument rejected by the Ninth Circuit: "that the alleged inefficiencies and risks of class arbitration will drive most businesses in California to abandon arbitration altogether if forced to permit class proceedings."  *Shroyer*, 498 F.3d at 993.  As the Supreme Court explained in *Stolt-Nielsen*, "class-action arbitration" combines the massive "commercial stakes of class-action arbitration"—which "are comparable to those of class-action litigation"—with a "scope of judicial review [that] is much more limited" than what would be available in court.  130 S. Ct. at 1776.  Although many businesses are willing to take the risk of limited judicial review in an individual arbitration because of the cost savings and their desire for a less adversarial method of resolving disputes with customers, the calculus changes dramatically if class-wide arbitration is required.  If faced with the choice between exposing themselves to the risk of a class-wide arbitration or giving up on arbitration entirely, businesses will unfailingly choose the latter course.  Nothing could more clearly "frustrate the purpose" (*Livadas v. Bradshaw*, 512 U.S. 107, 116 (1994)) of the FAA to "achieve 'streamlined procedures and expeditious results.'"  *Preston*, 552 U.S. at 357 (quoting *Mitsubishi*, 473 U.S. at 633).

Given the Supreme Court's holding that the FAA precludes arbitrators from conducting class-wide arbitration when the parties' agreement is silent on the

12

MEM. OF P'S AND A'S IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND TO DISMISS CASE OR, IN THE ALTERNATIVE, TO STAY CASE, CASE NO. 2:10-CV-02136-DSF (SSx)

subject, it follows inexorably that the FAA also precludes states from requiring parties to submit to class-wide proceedings as the price of obtaining admission to the arbitral forum.  This is all the more so given the Ninth Circuit's recognition in *Laster* that ATTM's arbitration provision "essentially guarantee[s] that the company will make any aggrieved customer whole who files a claim." *Laster*, 584 F.3d at 856 n.9.  Because there are no obstacles to a customer receiving full compensation in individual arbitration under the pro-consumer terms of ATTM's arbitration provision—and, in fact, customers are "essentially guaranteed" such a recovery (*id.*)—any state-law interference with the operation of plaintiffs' arbitration agreements is preempted by the FAA.

## CONCLUSION

ATTM's motion to compel arbitration should be granted, and this case should be dismissed.  In the alternative, the Court should stay this case pending resolution of *Concepcion*.

Dated:  June 3, 2010                    MAYER BROWN LLP

By:/s John Nadolenco_____
    John Nadolenco
    jnadolenco@mayerbrown.com
    MAYER BROWN LLP
    350 South Grand Avenue, 25th Floor
    Los Angeles, CA  90071-1503
    Telephone:  (213) 229-9500
    Facsimile:   (213) 625-0248

Donald M. Falk (CA Bar No. 150256)
dfalk@mayerbrown.com
MAYER BROWN LLP
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA  94306-2112
Telephone:  (650) 331-2000
Facsimile:   (650) 331-2060

David L. Balser (GA 035835)
(admitted pro hac vice)
dbalser@mckennalong.com;
Nathan L. Garroway (GA 142194)
(admitted pro hac vice)
ngarroway@mckennalong.com;
MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, N.E., Suite 5300
Atlanta, GA 30308
Telephone:  (404) 527-4000
Facsimile:   (404) 527-4198

Attorneys for Defendant
AT&T Mobility LLC

*Of counsel:*
Evan M. Tager
Archis A. Parasharami
Kevin Ranlett
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
Tel: (202) 263-3000
Fax: (202) 263-3300

14